The third case this morning, Childress v. Walker. Mr. Choi. May it please the Court. Good morning, Your Honors. My name is Eric Choi, and I represent the Plaintiff Appellant, Mr. Childress. This is a case about a promise to be free from prison that was not honored. Mr. Childress was granted mandatory supervised release, and on August 19, 2010, was purportedly released from Big Money River Correctional Center. As he left the prison, he did not know that the property box, which contained his personal effects from five years earlier, now contained a plain white envelope within which was sealed a computer disk. The administrators and personnel of Big Money River placed that disk in his property box. When they did so, they knew that it would put him in immediate jeopardy of losing his liberty. It would ultimately cause him to lose his mandatory supervised release. There were indications of this happening two or three other times previously? That's correct, Your Honor. Was it the same concession or admission that they hadn't opened the envelope for themselves? That particularized fact is not in the record, Your Honor. However, there's a generalized statement made in the allegations in this complaint that the circumstances were similar, if not identical, concerning the same disk. You say that the complaint alleges that the prison authorities knew this would violate his conditions or cause him to violate his mandatory supervised release conditions, but this condition of being prohibited from possessing computer-related materials, if I understand this correctly, it's not a standard condition of mandatory supervised release. It was a particular condition imposed at his sentencing. Based on the allegation of the complaint, it's our understanding that the conditions of mandatory supervised release that would prevent or prohibit the possession of a computer-related material is not specific to just Mr. Childress, but is specific to individuals that have been convicted of crimes concerning sexual violence. So how many of the inmates at that particular prison had that particular criminal history? While it's not in the record, we conducted some independent research, and we were able to determine that as of 2010, over 50% of the individuals at that particular prison were there for sexually-related crimes. So it is with that in mind. That appears to be where the Illinois Department of Corrections puts their sex offender inmates. That seems to be the case, Your Honor, yes. So on the face of it, we've got the folks at the prison with all the sex offenders slipping the computer disk, which they're not allowed to have, into their goodbye pack. Right. In any instance in which any of those 50% or more inmates would have a disk slipped into their package, they would be in immediate jeopardy of losing their freedom to the extent that they were released on mandatory supervised release. So is it a standard MSR condition? It is a standard MSR condition. It's not part of the statute, though, is it? That's correct, Your Honor. And the Illinois Department of Corrections, and particularly the prison, can set forth additional more restrictive conditions on mandatory supervised release, and those might be specific to the particular individuals or they may be specific to a particular group of individuals. The prison can do it upon release. The prison has authority to set conditions for the person being released. That is correct, Your Honor. It's like parole? It's my understanding that it is exactly like parole. Additional conditions can be set depending on the nature of the crime or the particular individuals or the group of people. It's not done by the sentencing judge. It's done by the detaining authorities, by the corrections authorities. Yes, Your Honor. And is this condition routinely set for sex offenders by the Department of Corrections? It's our understanding that that is the case. That was not alleged in the complaint, but that is our understanding. So in light of this understanding of the conditions of parole, the administrators and personnel of Big Muddy River had placed the disk in Mr. Childress' property, knowing that there was a substantial risk that his constitutional right to be free would be jeopardized. This was not an isolated incident, as Your Honors had stated. This had happened twice at least before. This was not an accident. This was a known risk that could have been avoided through very simple procedural safeguards, but it was disregarded. Did Mr. Childress have a parole revocation hearing? He did. And at that hearing, I presume he could have raised this issue of, in effect, innocent possession. That is correct. We don't know exactly what the circumstances of his revocation hearing were. And that occurred, though, what, after he had been taken back into custody for about three months? I believe it had been about three months, maybe two-and-a-half months thereafter he had actually had his formal revocation hearing. He had no pre-deprivation hearing, did he? That's correct. He had had no pre-deprivation hearing, and it is our contention that it was not only the post-deprivation procedures that could have helped him here. Indeed, they could have helped him, but what he lacked and what was not provided to him were the pre-deprivation procedures. The prison could have undergone or undertaken very simple and very easy and low fiscally burdensome procedures to have avoided this particular circumstance from the outset. It's our position that, at least with respect to the procedural due process claim, the prison could have very easily put together a set of procedures that would have avoided this, and those might have included simply telling the prisoner, hey, you've got to check your package, here's an inventory list with what you came in with, make sure that there's nothing in this box that you didn't leave with, and put the burden on the prisoner in question so that the prison itself does not have to make the burdensome scrutiny of exactly what's inside everybody's package. They could have stamped the envelope with a notice that simply stated, this envelope contains computer-related material, would have then shifted the onus to the prisoner to take a look and consider what was the condition of their MSR and whether they could have that. They could have even printed copies of the resume and cover letter that were contained in the disk instead of giving the disk, and at least with respect to 50% of these inmates, giving them the disk would have done no good in any event because they could not access that disk under the conditions of their parole. So how long have they been receiving this training thing, the courses or the program? I'm not sure what the genesis of the program is and how long it's been around. What I do know is that it's a part of a series of courses that the inmates can take, this one in particular being a job preparedness program, and I'm not sure how long they've been providing it. But I guess they assume they're going to use a computer after you leave it to see the… Right. So the assumption is that in order to access the materials that would benefit them from finishing this program, they would have to use a computer to get the resume and cover letter. And, of course, in Mr. Childress's case and in the case of at least 50% of the population, they wouldn't be able to actually access any of that material. So in this case, printing 10 copies of the resume and 10 copies of the cover letter might have been the better solution and pretty low in terms of a fiscal or administrative burden, and that would have completely avoided this whole unfortunate circumstance. How long did he serve as a result of this? Approximately one additional year. I believe he was finished with his sentence in August of 2011. Was any other prohibited item found when they did this search of his house other than this CD with the resume on it? No. This is the sole basis of his revocation? Yes. There's a form in the record that purports to be kind of the basis for why parole or mandatory supervisory release is revoked. I think there's another box, and that's checked, and it simply says computer-related material. Mr. Childress was with his acquaintance at the time that the agent had come by and located this disc, and he testified that the only basis for the revocation or that the only basis for the detention at that moment was this particular disc, which, of course, was in the steel-sealed envelope in the box that it had been placed in at the outset. There are a couple of other points. So your allegations go toward a whole lot of people at the institution and even others, the teacher of this class who's outside the institution, if I understand it. How do all these people know that this sealed envelope, unmarked, contains a disc and is going to go in his materials? That's hard for me to understand. Right, and we've made the further allegation, Your Honor, that not only did they know that that disc would go into that particular person's box, but that particular person may have a condition of parole that would prevent them or prohibit them from having that. I don't understand how the teacher is going to know this. Right, understood. The teacher doesn't even give it directly to him. She just ships it back to the institution in some way. How does she know what they're going to do with it, that they're going to put it in a sealed envelope, that they're going to put it in his materials? That's hard for me to understand. As I stand here today, I couldn't tell you, Your Honor, exactly how they would know that, but there's an inference that can be drawn, at least from the allegations of the complaint, that she, the teacher of the person... You alleged that, but they didn't respond in any way to that. Right, the defendants had not yet been served. They had not had an opportunity to file an answer. This was screened out on 1915. Right, exactly. This was a screening. And your client had not refused an opportunity to amend. That's correct, Your Honor, and that's really our second point, and I think one that really pervades the whole discussion here. That's really the nub, isn't it, of where the district court fell off the tracks. This guy could have amended. He could have dropped some of these other people. He could have focused on the assistant warden who told him, hey, you know, we've had a couple of other people with this problem. But the district court didn't give him that opportunity to amend, and that's directly contrary to the very recent precedent to this court, right? That's correct, Your Honor. While we can at least acknowledge that the complaint was not as artfully worded as it should have been and could have been more specific, Mr. Childress should have been given at least one more shot. He was only given one, and under Louie Vano, a very recent Seventh Circuit decision, he, just like any other fee-paying plaintiff, should have been given the opportunity to amend his complaint at least once as of right or with leave, and he had actually made a specific request to the judge in his motion to reconsider. Instead of actually looking at that request, the judge said, well, you know, you can't attach the affidavits that you've attached to your motion for reconsideration. I'm not going to even consider what additional facts you might be able to put in the complaint and instead just dismiss with prejudice. And I think that that is really kind of our safety blanket in this case in that to the extent that there was no claim that could have been reasonably alleged based on the facts, then Mr. Childress should have been given at least one more opportunity to make it right, and that really ties also into the third basis for why the district court's dismissal should be reversed, which is that they did not consider Mr. Childress's motions to recruit counsel. This court has very clearly stated that to the extent that the district court is going to dismiss or deny, rather, a motion to recruit counsel, they must provide a reason or an explanation for doing so. The judge provided no explanation whatsoever. It simply stated that the motions were moot in light of the dismissal, and in this case, had Mr. Childress had the opportunity to recruit counsel, that counsel perhaps could have investigated the facts, thinned the complaint down a bit, and made it a little more specific, and perhaps gotten him past the dismissal stage. And he never really had that opportunity because he didn't have the opportunity to amend his complaint. There is one final issue that the court has asked the parties to take a quick look at and brief, and that is whether an individual that's detained under the Illinois Sexually Violent Persons Commitment Act is also a prisoner for the screening purposes of Section 1915A of the Prison Litigation Reform Act. Our contention is that the answer is no. This court has never actually made a statement as to whether or not they are in fact a prisoner and then would be subject to the three strikes provision, but it has opined in concurring opinions and has looked to northern district cases in which the judges have said an individual that is being detained at the Rushville Detention Center is there for rehabilitation purposes, not for punishment, and therefore they cannot be labeled as a prisoner, and thus not subject to the three strikes policy. Now, if you were to prevail, you would not reach that issue, am I correct? That's correct, Your Honor. The district court initially came out the other way and said, yes, you are a prisoner. One of your strikes is gone. My client moved for reconsideration, and the judge actually reversed its prior order on that, so we're not appealing that issue. We've addressed it simply because the Seventh Circuit has asked. And all the circuits who have ruled on that have ruled. Many of them. I'm not sure of all of them, but many of them have, and I believe. No, all that have ruled. Have ruled that an individual detained under similar statutes are not considered prisoners. Right. Under the Prison Litigation Reform Act. There's a unanimity among the courts of appeals at this present time, at least. That is correct, Your Honor. If Your Honors don't have any further questions, I will see the floor. Thank you. Thank you. Counsel. Good morning. May it please the Court. Did you draw the short straw? I am Stephen Soltanzade from the Illinois Attorney General's Office on behalf of the party in interest, Illinois Attorney General Lisa Madigan. To determine if a complaint states a claim for deliberate indifference, the court looks at each defendant individually and asks if they had actual knowledge of a substantial risk of harm and then acted recklessly in the face of that knowledge. They have to have consciously disregarded that substantial risk. Here there was no individual defendant had actual knowledge of a substantial risk of harm. And here I think it's important to clear up a couple of misconceptions. First of all, no statute requires the MSR term at issue here. There's no Illinois law that requires a sex offender or any other inmate released on MSR to have an MSR condition that states that he's not allowed to have any computer-related material. And there's no, these defendants, these IDOC officials were named. Mr. Choi, right, that the DOC can impose conditions of release that's within the authority of the DOC to impose special conditions, if you would, of MSR? No, Your Honor, that's not right. The Prison Review Board, a separate entity, not named in this complaint, that's separate from DOC, sets... What entity is that? It's the Prison Review Board, Your Honor. And the same statute that discusses... Well, but that's within the Department of Corrections, though, right? It's not, though. It's a separate state agency that's responsible. This is a civil commitment. It's not a criminal conviction, right? Well, he's now civilly committed. At the time he was detained, my understanding from what we have in the record, which admittedly is a limited record, we have the complaint and a few things attached to the complaint. It appears at the time that this occurred, he was actually detained on his criminal conviction, which was aggravated criminal sexual assault. So at that time, when he goes in on that conviction, he's given... And when it's determined that he will eventually be released on MSR, he's given MSR conditions. One of them, in this case, plaintiff was given a condition by the Prison Review Board that he was not allowed to have any computer-related material. But there's no allegation in the complaint, and there's no reason to believe that any of these defendants knew about that condition. It may well... But the allegations are that they did. I don't see that allegation in the complaint. At this point, that allegation is discussed on briefing. On briefing, plaintiff says they should have known, and plaintiff has done some research on appeal that says over 50% of the inmates in this institution are sex offenders. But being a sex offender doesn't require you to have this type of MSR term. These defendants had to have actual knowledge that there was a risk to this plaintiff, and there's no allegation that they did. There's no allegation that the teacher who sent this disc, the only defendant who had any possession of this disc, would have known that this plaintiff wasn't allowed to have a computer disc when he left the prison on MSR. There's no allegation that any of the DOC employees would have known that either. Now, there is an allegation that one defendant, Ty Bates, who at the time was an assistant warden, knew that somewhere in Illinois this type of thing had happened two times before. Do they have notice now? That's a good question, Your Honor. You mean it could still be going on? I think any plaintiff now who had the same thing happen, who had a basis for an honest allegation that one of these employees knew about this program and knew that there was a substantial risk of them receiving a computer disc, even if it was just that they learned it through the process of this case, would certainly have a better claim than this particular plaintiff. But you have to plead actual knowledge. There's no constructive knowledge. Constructive knowledge is insufficient. This fellow never got an opportunity to amend the complaint, did he? That's true, Your Honor. And he should have, right? Under the law, he should have. Well, it's the law in this circuit that we don't treat IFP plaintiffs differently than we treat paying plaintiffs. That's true. But even a paying plaintiff, if they don't ask for leave to amend within 21 days, which is of service, which is not the case here, there was no service here, and more than 21 days passed even from the filing of the complaint before he asked for leave to amend. They still need leave of the court. And even though that leave should be freely given, the court does not have to grant leave if amendment would be futile. And even here on appeal, we haven't heard how this complaint would be amended to save it. There's no discussion of IFP. Do you think he has a viable claim against this assistant warden? I do not, Your Honor, for the same reasons that he did in his initial complaint, which is this assistant warden didn't have actual knowledge that there was someone at this prison, at Big Muddy River Prison, not just somewhere in Illinois, but at this prison in this lifestyle redirection program, this actual program where they give out these disks, that was at risk of leaving the prison with material that he was not... You can tell all that from a pro se complaint that hasn't been amended. Well, even, again, Your Honor, there's no reason to believe he could amend it to say something else. He gave a very detailed description of the conversation he had with Defendant Bates, and even that doesn't establish a substantial... How did he get into this program? It's not clear, Your Honor. It's not clear from the record. I do not have any independent knowledge. I'm sorry, where is the program given? I mean, it's like a classroom situation? Again, it's not in the record. The teacher of the program is actually an employee of Renslake College. She's not an IDOC employee, and that is in the record. Is that where Big Muddy is? I can only assume, Your Honor, I think the fair assumption is that the teacher comes to the prison and administers the program there, but, again, I don't have anything in the record to say so. But, I mean, maybe this is simplistic, but the prison system, or whoever runs the system, contracts with the school, the college, whoever, and the instructor comes and provides information to inmates who are not supposed to have that particular information and then turn around and charge the inmate and serve another year because the prison system gave them the information they shouldn't have. Your Honor, yes, there are a couple of answers to that question. First, this is not like the prison gave obvious contraband to this prisoner. For many, many prisoners, what they gave would be beneficial. No, it's not obvious, but for a sex offender, it might be. Well, again, there's no allegation that that's true, and the statutes don't suggest that that's true. There's one person who is... Let me ask you this. Is there any reason that the Attorney General's office hasn't worked with the prison system and said, we've got a problem, let's correct it and get rid of this case? Your Honor, there is no reason for it. The only allegation about this happening before is the statement that this had happened twice before in Illinois. There's no reason to believe that this was some ongoing... It happened once. Well, Your Honor, these plaintiffs, it's entirely reasonable to assume that an inmate being released to MSR who has MSR conditions is going to look in his property box to see what he has. This guy did another year on something that the prison system gave him. The prison system gave it to him. No one who gave it to him, this teacher really is the only person who gave him this case. No, no. Knew that he was not... The prison system indirectly gave it to him. My question is, why are we here? Why is the state of Illinois here even defending this thing? Your Honor, it's... First of all... Actually, I think we invited you. Yes. I'm sorry, but that's the answer. Yes, Your Honor. We have not represented any defendant in this case. Then you'd really be in trouble because you wouldn't be able to respond to these questions. Yes. Right. That is true, Your Honor, but I think we have a very high standard for these constitutional claims in this regard. Did something unfortunate happen here? Yes. Could there be ways to ensure this doesn't happen in the future? That might be true, but what we have here is a deliberate indifference claim  You're trying to shift the burden to the inmate that when he gets this leaving packet, he's supposed to go through it to make sure they didn't stick cocaine or computer stuff or other contraband in there. Well, let me be clear, Your Honor. It seems to me that the prison authorities have some duty, a higher duty, not to pack it with contraband. And that if a higher up authority knows that contraband is being packed into inmates' leave property, that that could be a due process violation. Absolutely, Your Honor. If an authority of this prison knew that contraband was being packed into these boxes, you might have a problem, but none of these... I guess that's what I think you can read from these allegations. Your Honor, the way these allegations have been briefed on appeal, they speak very generally about these defendants and seem to impute knowledge from one defendant to another. But that's not how these constitutional claims work in federal court. You have to have a specific allegation that there was a specific defendant. This deliberate indifference claim stems from the Eighth Amendment cruel and unusual punishment prohibition. The theory is the reason this standard is so high for deliberate indifference is that you can't negligently or unreasonably, cruelly and unusually punish someone. It has to be deliberate. It has to be, at the very least, it has to be reckless. So you have to have a defendant who knew what he was doing or she was doing, knew that this was going to result in this severe penalty. Admittedly, a year served in prison, we're talking about something very serious here, and we're not blaming the plaintiff. We're looking at the defendant and saying, did the defendant do something reckless by assuming, even assuming there was a risk of harm, assuming that a plaintiff is going to make sure he's in compliance with his MSR terms. This plaintiff had not just the opportunity when he left prison to look through his box. He had two more weeks. He had from August 19th to... Now you're arguing the merits, you know? I mean, all this guy's asking for is a chance to amend his complaint. Well, if... I mean, that's all he's asking for. He didn't even get in the front door. He got stopped at the front door here. And all he wants to do, he says, hey, look, Judge, why don't I give you a chance to amend my complaint? Okay, Your Honor. Yes, Your Honor. I understand the point. The merits are briefed on appeal, so that's why I addressed the merits. In terms of amending the complaint, I think the standard is pretty clear that if justice requires, then the district court should freely grant leave to amend the complaint. That doesn't mean district courts can never deny leave to amend, and it doesn't mean that district courts have some discretion in that regard. Here, the district court didn't have any reason to believe that an amendment could be made. It didn't see any allegations offered by plaintiff that would have saved the complaint, and so it dismissed the complaint with prejudice. This was a pro se complaint initially. It was never amended when counsel took over the case. Yes, Your Honor. Plaintiff never had counsel below. That's true, Your Honor.  the plaintiff did move twice for counsel, but his explanations for why he needed counsel, the thrust of those explanations had to do with latter stages of trial, discovery, further investigation of the complaint, and trial itself, and for those reasons, the district court reasonably denied those motions for appointment of counsel. This particular district court has how many prisons do they have in the central district of Illinois? This was the southern district of Illinois, Your Honor. I'm sorry. Southern district of Illinois, Your Honor. I believe. But they have a number of prisons. What I'm saying is that the judges there see a lot of prisoner petitions. I believe that's true, Your Honor. The trouble here is, of course, he never really even, the district judge never really considered the motion to appoint as far as we can tell. Well, in its order, it does deny all outstanding motions as moved, so it wasn't as if it didn't rule on the motion, but to be fair, Your Honor, there's no extensive discussion of the motion for appointment of counsel. But again, I think it's reasonable that the motions were denied as moved because the motions, the thrust of those motions had to do with post-pleading stages, so the district court reasonably could have decided, well, the reasons he has for needing counsel really aren't in effect here. Your Honors, we acknowledge this is unfortunate that a prisoner violated MSR by having a computer disk that didn't have any illicit material on it, but the best person to understand what his MSR conditions were and how to comply with those was the plaintiff himself. No single defendant here. What does he do? He gets home, opens up his packet, and sees this envelope, and opens up the envelope. He's in violation as soon as he sees that. He can't get rid of it. It can't be. To have it is a violation. That's true, Your Honor. He would be in violation. The district court addresses this. So how does he prevent it? I suppose he could throw it out. The district court says he has a number of options to address that very question. It says he has a number of options. So if they can prove he threw it out, they do a trash pickup, and he's got a computer CD there, he's in violation. Your Honor, I think that's true. I think that might be a question. He's been put in a trick bag by the prison authorities. I think that might be a question for his MSR hearing. If he made a reasonable attempt to, upon discovery of contraband, get rid of it, I'm not sure that the Prison Review Board has discretion in how they handle a parole violation. And so there may be a separate claim there if they deny parole on that ground. It's pretty hard to see how this disc and the contents of it would violate a reasonable condition of supervised release. It gives him no access to the Internet, which is the fear of him being a predator and so on. Your Honor, the Prison Review Board makes these decisions based on the circumstances of each individual inmate and the crime. I don't know what those circumstances are. But certainly that's something that could be raised when he has his hearing on the revocation of parole, which is not at issue in this procedure. Is the Prison Review Board, let's see, who are the defendants in this case? There are several defendants, Your Honor, several IDOC employees, and there's one teacher who's the Renlake College employee. But are they separate entities? In other words, they're not all under the control of your prisons. That's one of the problems we're having. I'm having trouble understanding. I think that's true, Your Honor. I see my time is up. Thank you very much, Your Honor. Thank you, Counsel. How much time? You have one minute. Thank you, Your Honors. Briefly, I just wanted to touch on a couple points. I think that admittedly there is a little bit of ambiguity in terms of who promulgates the additional conditions to MSR, whether it's the parole board or the prison. I'm not entirely sure myself. I think that does not matter, though, in this case. The allegations have adequately stated that there was a policy and a practice in place. And this case is different than other cases because we have a stark confession from one of the wardens that stated that it had happened before and that he and others knew about it. So that, although general, I think does impute this knowledge or this requirement that they have an understanding of this obvious danger to the others that have been named in the complaint. Briefly on the motion for leave issue, I think we've discussed it at length, but what the district court could have done is informed Mr. Childress whether it believed that an amendment would have been futile or inequitable. In that circumstance, that may have been an exception to the generalized rule that Mr. Childress should get leave to amend. The district court did not say that. I see that my time is up, Your Honors. Thank you very much for the time. It was a privilege. Thanks to both counsel for the helpful information you provided. Thank you very much. The case will be taken under advisement.